UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

————————————————————

MICHAEL T. MILLER, M.D.,

                Plaintiff,

     v.

GREAT LAKES MEDICAL IMAGING,
LLC, *a/k/a Western New York Radiology,
LLC*,[1]

           Defendant.

————————————————————

**DECISION AND ORDER**

6:19-CV-06919 EAW

## <u>INTRODUCTION</u>

Plaintiff Michael T. Miller, M.D. ("Plaintiff") asserts various claims arising out of his former membership in and employment by defendant Great Lakes Medical Imaging, LLC a/k/a Western New York Radiology, LLC ("Defendant"). (Dkt. 1). Presently before the Court is a motion filed by Defendant seeking dismissal of Plaintiff's first, second, and third causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 5). For the reasons set forth below, Defendant's motion is denied.

---

[1]     The complaint identifies the defendant as "Great Lakes Medical Imaging, LLC a/k/a Western New York Radiology Associates, LLC." (Dkt. 1 at 1). In a footnote in its memorandum of law in support of its motion to dismiss, Defendant asserts that "[t]he caption erroneously names the defendant as 'Great Lakes Medical Imaging, LLC a/k/a Western New York Radiology, LLC.' GLMI is not 'known as' Western New York Radiology, LLC. The two are affiliated, but separate, corporate entities." (Dkt. 5-5 at 6 n.1). Elsewhere in its papers, Defendant indicates that Western New York Radiology Associates, LLC is "for all intents and purposes the predecessor of GLMI." (Dkt. 5-3 at ¶ 6). However, at this stage in the proceedings, the Court is required to accept the factual assertions set forth in the complaint as true. The Court has accordingly not modified the caption.

## BACKGROUND

The following facts are taken from the complaint (Dkt. 1), and the exhibits attached thereto. As required on a motion to dismiss, the Court treats Plaintiff's factual allegations as true.

Plaintiff was born in 1957 and is a board-certified radiologist. (*Id.* at ¶ 2, 10). Plaintiff was employed by Defendant from April 2003 until February 1, 2018. (*Id.* at ¶ 10).

On December 27, 2016, Dr. Wendy Zimmer ("Dr. Zimmer"), a female colleague and coworker of Plaintiff, filed a lawsuit against Defendant and one of its officers and members, Dr. Michael Silber ("Dr. Silber"). (*Id.* at ¶ 13). According to Dr. Zimmer's fourth amended complaint, which Plaintiff attaches to and incorporates by reference into his complaint (*see id.*), Dr. Zimmer, who is a board certified neuroradiologist, made multiple complaints of gender discrimination related to her treatment by Dr. Silber. (Dkt. 1-1 at 14-15). Dr. Miller "supported [Dr. Zimmer's] complaints about Silber's gender discrimination at meetings of the members of" Defendant and further, "during the brief time in 2014 when Dr. Miller was president of [Defendant], he also had restored [Dr. Zimmer's] female partner's wages that had been lowered for years." (*Id.* at 16).

Following Dr. Zimmer's complaints and the filing of her lawsuit, Plaintiff and Dr. Zimmer were "progressively scheduled to work outside of Buffalo General Hospital, an environment in which they had flourished for many years," and ultimately informed on January 27, 2017, that they would no longer be allowed to work at Buffalo General Hospital at all. (*Id.* at ¶¶ 17-18).

Shortly after informing Plaintiff that he would no longer be allowed to work at Buffalo General Hospital, Defendant launched an internal investigation into Plaintiff based on "fabricated and retaliatory charges[.]" (*Id*. at ¶ 19). Plaintiff had never previously been the subject of a complaint in his career. (*Id*. at ¶ 20).

On May 3, 2017, Plaintiff was "summoned to a meeting by the head of the Professional Review and Compliance Committee, Dr. Regenbogen, . . . to discuss the allegations." (*Id*. at ¶ 21). Plaintiff was "denied details of the complaints," "denied legal representation at the meeting," "denied the opportunity to refute the allegations," and was "not given the opportunity to address his colleagues . . . in open forum, as had been done with others in the past." (*Id*.). On August 21, 2017, Plaintiff was fined $10,000 by Defendant for having allegedly violated Defendant's code of conduct. (*Id*. at ¶ 22). Dr. Zimmer was fined $20,000. (*Id*.). Neither Plaintiff nor Dr. Zimmer "was ever given an accounting of exactly what infractions they committed." (*Id*.).

On November 1, 2017, Plaintiff and Dr. Zimmer were notified that their employment with Defendant "had been 'terminated without cause' by unanimous vote of the members." (*Id*. at ¶ 24). Neither Plaintiff nor Dr. Zimmer was included in such vote. (*Id*.).

Plaintiff filed a claim with the Equal Employment Opportunity Commission, and was issued a right-to-sue letter on September 26, 2019. (*Id*. at ¶ 9).

## PROCEDURAL BACKGROUND

Plaintiff filed the instant action on December 23, 2019.  (Dkt. 1).  Defendant filed the instant motion to dismiss on April 7, 2020.  (Dkt. 5; Dkt. 6).  Plaintiff filed his opposition on April 21, 2020 (Dkt. 11), and Defendant filed its reply on April 28, 2020 (Dkt. 12).

## DISCUSSION

### I.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.    Plaintiff's Claims

Plaintiff's complaint alleges four causes of action: (1) a claim of retaliation in violation of federal law; (2) a claim for breach of contract; (3) a claim of retaliation in violation of New York State law; and (4) a claim of age discrimination in violation of federal law.  (Dkt. 1 at ¶¶ 28-46).  Defendant seeks dismissal of the first three of these causes of action.  For the reasons set forth below, the Court finds Plaintiff's first, second, and third causes of action sufficiently pled to survive a motion to dismiss.

### A.    Retaliation Claims

Both Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law (the "NYSHRL") prohibit retaliation against an individual who has opposed unlawful gender discrimination.  To allege a *prima facie* case of retaliation under either of these statutes, "a plaintiff must demonstrate that (1) []he engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)  (citation omitted).  "Protected activity refers to action taken

to protest or oppose statutorily prohibited discrimination," and "can be either formal, such as the filing of formal discrimination charges, or informal, such as making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Champion v. New York State Off. of Parks, Recreation & Historic Pres.*, No. 18-CIV-4955 PAE KHP, 2020 WL 6487638, at *18 (S.D.N.Y. Nov. 4, 2020) (quotations omitted).

Defendant contends that Plaintiff has not plausibly alleged that he engaged in protected activity, because he merely "vaguely suggest[s]" that he supported Dr. Zimmer, "without any factual support[.]" (Dkt. 5-5 at 17). Defendant's argument fails to take into account the facts set forth in Dr. Zimmer's fourth amended complaint, which Plaintiff attached to and incorporated by reference into his complaint in this case. *See Lightner v. Wenderlich*, 271 F. Supp. 3d 445, 453 (W.D.N.Y. 2017) (on a 12(b)(6) motion, the Court may consider both documents attached to the complaint as exhibits and documents incorporated into the complaint by reference).

Dr. Zimmer's fourth amended complaint explains that she made "at least four formal complaints of gender discrimination and retaliation" and that Plaintiff (1) supported these claims during meetings of the members of Defendant and (2) to the extent he was able, restored the wages that Dr. Zimmer contended had been cut on the basis of unlawful discrimination. (Dkt. 1-1 at 15-16). While these allegations are not particularly detailed, they are sufficient to render Plaintiff's claim that he engaged in protected activity plausible. *See Littlejohn v. City of New York*, 795 F.3d 297, 318 (2d Cir. 2015) ("[I]f an employee

. . . actively supports other employees in asserting their Title VII rights or personally complains or is critical about the discriminatory employment practices of her employer, that employee has engaged in a protected activity[.]" (quotations and original alterations omitted)).

Plaintiff has further plausibly alleged that Defendant was aware of these activities. The Second Circuit has held that all that is necessary "to satisfy the knowledge requirement" is "general corporate knowledge that the plaintiff has engaged in a protected activity." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 147-48 (2d Cir. 2010) (citation omitted); *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) ("[T]he 'knowledge' requirement is met if the legal entity was on notice."); *Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 318 (E.D.N.Y. 2014) (finding knowledge requirement satisfied where the plaintiff alleged that "at least two managers" were on notice of his complaint), *aff'd*, 594 F. App'x 29 (2d Cir. 2015). Here, Plaintiff asserts that he voiced his support for Dr. Zimmer's complaints at meetings of Defendant's members, which plausibly supports the inference of corporate knowledge. Further, Defendant plainly would have been aware of Plaintiff's actions in reversing the decrease in Dr. Zimmer's wages, as the entity that paid those wages.

Plaintiff has further plausibly alleged a causal relation between his protected activity and certain materially adverse employment actions.[2] The record before the Court indicates

---

[2]     In the context of a retaliation claim, "materially adverse" means an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir.

that Dr. Zimmer filed a formal letter of complaint dated November 14, 2016.  (Dkt. 1-1 at

29).  She then filed her lawsuit on December 27, 2016.  (*Id*. at 33).  Approximately one

month later, Dr. Zimmer and Plaintiff were permanently removed from working onsite at

Buffalo General Hospital.  (*Id*.).  In this same time frame, Defendant launched the

purportedly sham internal investigation that resulted in Plaintiff being charged a $10,000

fine. (Dkt. 1 at ¶ 19).  "A plaintiff can indirectly establish a causal connection to support

a discrimination or retaliation claim by showing that the protected activity was closely

followed in time by the adverse employment action."  *Gorzynski v. JetBlue Airways Corp*.,

596 F.3d 93, 110 (2d Cir. 2010) (find *prima facie* case of retaliation where adverse

employment action occurred "within a month" of protected activity).

Plaintiff has plausibly alleged all the elements of a retaliation cause of action.  The

Court finds that dismissal of Plaintiff's retaliation claims (the first and third causes of

action) is not warranted.

### B.  <u>Breach of Contract Claim</u>

Defendant also seeks dismissal of Plaintiff's breach of contract claim, arguing that

(1) Plaintiff has failed to identify the provisions of his contract with Defendant that were

breached or explain how Defendant breached them; (2) Plaintiff's claims are contradicted

by the terms of the contract; and (3) Plaintiff cannot rely on the implied covenant of good

faith and fair dealing because it would be inconsistent with the terms of the parties'

agreements.

---

2010) (citation omitted).  Defendant has not argued that the adverse employment actions
identified by Plaintiff do not meet this standard.

New York law governs Plaintiff's breach of contract claim.  "Under New York law, a breach of contract claim has four elements: '(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'"  *Acquest Holdings, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 217 F. Supp. 3d 678, 686 (W.D.N.Y. 2016) (quoting *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)).  In this case, the parties agree that the contract at issue is a "Service Agreement" entered into on January 1, 2011.  (Dkt. 5-4) (the "Service Agreement").  Plaintiff acknowledges that the Service Agreement was "expressly referenced and relied upon in the Complaint" and that it is thus properly considered on the instant motion to dismiss.  (Dkt. 11 at 6); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (in deciding motion under Rule 12(b)(6), the Court may consider a document "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint"  (quotations omitted)).

Plaintiff has plausibly alleged that Defendant breached the express terms of the Service Agreement.  The parties do not dispute the existence of the Service Agreement, nor does Defendant dispute that Plaintiff has plausibly alleged his own performance of his contractual obligations.  Further, contrary to Defendant's argument, Plaintiff has identified the specific contract terms that he alleges Defendant breached:  the contractual requirement that scheduling be performed on "a reasonable and equitable basis" and the contractual requirement that, in the event Plaintiff was to be terminated without cause, he be given the opportunity to vote on said termination.  (Dkt. 1 at ¶¶ 24, 32; *see* also Dkt. 5-4 at 2 (section 2.2 of the Service Agreement providing that Defendant will determine the schedule "on a

reasonable and equitable basis"), 23 (section 12.5 of the Service Agreement providing that Plaintiff "shall be entitled to vote" on a proposal that he be terminated without cause)). Plaintiff has further alleged that Defendant breached these contractual obligations by (1) allowing Dr. Silber to set the schedule based purely on animus, rather than reassigning scheduling duties to a different staff member, and (2) notifying Plaintiff on November 1, 2017, that his employment had been terminated without cause when he had not been "notified of the meeting in which this was discussed, let alone given the opportunity to vote[.]" (*Id.* at ¶¶ 32, 34). Finally, Plaintiff has alleged that he suffered monetary damages as a result of these breaches. (*Id.* at ¶ 36). Plaintiff's breach of contract claims based on Dr. Silber's inequitable scheduling and on his termination are sufficiently pled to proceed to discovery.[3]

The Court further finds that Plaintiff has stated a viable claim for breach of contract based on Defendant's levying of a $10,000 fine. While Plaintiff has not identified an express term of the Service Agreement that Defendant violated in connection with this action, he has plausibly alleged that Defendant violated the implied covenant of good faith

---

[3]     Having determined that Plaintiff has stated an express breach of contract claim based on his termination, the Court need not, at this stage of the proceedings, reach Defendant's argument that a termination without cause cannot constitute a breach of the implied covenant of good faith and fair dealing. *See Diversified Prod., Inc. v. Tops Markets, Inc.*, No. 99-CV-0457E F, 2001 WL 640697, at *3 n.15 (W.D.N.Y. June 7, 2001) ("A plaintiff always can allege a violation of an express covenant. If there has been such a violation, of course, the court need not reach the question of whether or not an implied covenant has been violated." (citation omitted)).

and fair dealing.[4]  "Under New York law, a covenant of good faith and fair dealing is implied in all contracts." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011).  This implied covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (quoting *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002)).  In other words, the covenant of good faith and fair dealing "is breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under the agreement." *Williamson Acquisition, Inc. v. PNC Equity Mgmt. Corp.*, Nos. 03-CV-6666T, 04-CV-6259T, 2010 WL 276199, at *7 (W.D.N.Y. Jan. 15, 2010) (quoting *Skillgames LLC v. Brody*, 1 A.D.3d 247, 252 (1st Dept. 2003)), *aff'd sub nom. Argilus, LLC v. PNC Fin. Servs. Grp., Inc.*, 419 F. App'x 115 (2d Cir. 2011).

Defendant notes that Plaintiff's contract allows Defendant's board of managers "in its sole discretion" to impose disciplinary measures, including fines, for failure to comply with Defendant's rules, regulations, and procedures.  (Dkt. 5-5 at 12).  Defendant is incorrect that the contract's delegation of discretion prohibits a claim based on the breach of the implied covenant.  "Historically, New York courts have held that the covenant of good faith and fair dealing applies to cases where a contract contemplates the use of

---

[4]    In his opposition papers, Plaintiff suggests that Defendant violated its "Operating Agreement" by failing to include him in the vote that resulted in the fine being levied. (Dkt. 11 at 17-18).   However, Plaintiff has provided no information regarding the "Operating Agreement" or how it constitutes a contractual agreement between him and Defendant.  Further, nothing in the Service Agreement expressly affords Plaintiff the right to participate in such a vote, unlike a vote related to his termination.

discretion." *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, No. 20-CV-2151 (LJL), 2021 WL 621235, at \*5 (S.D.N.Y. Feb. 17, 2021).  In particular, under New York law, "even where a contract permits discretion to a contracting party, that party may not exercise that discretion arbitrarily or irrationally."  *Id*. at \*6 (collecting cases).  It is the role of a reviewing court to "read the contract as a whole to determine whether a limitation on the exercise of discretion would negate a term of the contract and then, depending on their reading of the contract, ask the question whether such a limitation is necessary to avoid rendering a contractual obligation illusory."  *Id*. at \*7; *see also C & E 608 Fifth Ave. Holding, Inc. v. Swiss Ctr., Inc*., 54 A.D.3d 587, 588 (1st Dept. 2008) ("[E]xercise of an apparently unfettered discretionary contract right breaches the implied obligation of good faith and fair dealing if it frustrates the basic purpose of the agreement and deprives plaintiffs of their rights to its benefits[.]"  (citation omitted))

Here, Plaintiff alleges that Defendant fabricated a violation by Plaintiff of Defendant's code of conduct and then imposed a monetary fine on him based on that fabrication.[5]  Allowing Defendant to exercise its contractual right of discretion in this manner would frustrate the basic purposes of the contract and deprive Plaintiff of the right

---

[5]     In its reply, Defendant asserts that Plaintiff did not allege in the complaint that Defendant "did not exercise good faith in its imposition of discipline and the $10,000 fine," with the decidedly unhelpful citation "*See* Complaint, generally." (Dkt. 12 at 10).  It is unclear to the Court what the basis for this argument is—Plaintiff alleges in detail that the internal investigation was a sham, that he was deprived of procedural protections that had been afforded in the past, and that the claims of misconduct were fabricated and retaliatory. (Dkt. 1 at ¶¶ 19-22).  Plaintiff then expressly references these allegations in his breach of contract claim.  (*Id*. at ¶ 35 (stating that Defendant violated the implied covenant of good faith and fair dealing by engaging in the "mistreatment and abuse" detailed in paragraphs 19 through 22, among others)).  Defendant's argument to the contrary lacks merit.

to his full, contractually guaranteed compensation.  Further, requiring Defendant to act in good faith in exercising its discretion with respect to discipline would not negate any other aspect of the Service Agreement; to the contrary, the Service Agreement contemplates that discipline shall flow only from actual misconduct.  Accordingly, the Court finds that Defendant may proceed with his claim for breach of the implied covenant of good faith and fair dealing based on this conduct.[6]

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 5) is denied. Defendant shall file an answer in accordance with the Federal Rules of Civil Procedure.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 19, 2021
       Rochester, New York

---

[6]     In its reply papers, Defendant argues for the first time that Plaintiff cannot recover for damages to his professional reputation "arising out of his breach of contract claim[.]" (Dkt. 12 at 11).  The Court does not consider this argument which was raised for the first time in reply.  *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) ("[A] district court is free to disregard argument raised for the first time in reply papers[.]"), *aff'd*, 374 F. App'x 71 (2d Cir. 2010).  In any event, Plaintiff has alleged damages beyond mere damage to his professional reputation, including monetary damages.